FILED
02 JAN -3 PM 12: 44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LARRY YOUNG,** | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-00-N-1304-S |
| | ] | |
| **CITY OF HELENA,** | ] | |
| | ] | |
| Defendant. | ] | |

ENTERED
JAN 0 3 2002

### Memorandum of Opinion

### I. Introduction

This is a federal question case. 28 U.S.C. §§ 1331, 1367 (2001). Plaintiff filed a twelve-count complaint that included a claim for violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and a number of state law claims. Originally, plaintiff asserted claims against Shelby County, the Shelby Regional Narcotics Task Force, and the City of Helena. Only the City of Helena remains. The court has for consideration defendant's motion for summary judgment, filed October 18, 2001 [Doc. # 60]. The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be granted.

### II. Facts[1]

This lawsuit arises from plaintiff Larry Young's discharge from employment as a police officer for defendant City of Helena ("Helena"). See Compl. Young contends that

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).



Helena wrongfully terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").[2]  Compl. at ¶¶ 114-22.  Young was employed by Helena from September or October, 1995, until July or August of 1999. Young Dep. at 35, 46. Ray Rollan, Helena's Chief of Police during Young's employment, was his supervisor. Rollan Dep. at 9, 30.  In connection with his employment, Young worked undercover in Walker County, Alabama, as part of the Shelby Regional Narcotics Task Force ("task force"). Young Dep. at 82-85.  The task force had been formed for the purpose fighting illegal drug trafficking in Shelby County, Alabama.  Rollan Dep. at 12; Owens Dep. at 10; Wade Dep. at 12.

Young was initially sent to Walker County to set up a "head shop." *Id.* at 82-90.  After he began this assignment, he and Bobby Burleson, another member of the task force, met Phillip Smith, a known leader of the Ku Klux Klan ("KKK") *Id.* at 90-95.  Young and Burleson were then assigned to infiltrate the KKK.  *Id.* at 98-101.  Additionally, they were to gather information in connection with illegal weapons and church bombings.  *Id.*  Through that position, Young infiltrated and made drug transactions with the KKK.  *Id.* at 90-101.

Young began consuming alcohol to deal with the fear and stress associated with such work. *See id.* at 106-08.  His alcohol use escalated into drug use. *Id.* at 113-16, 119-24. At one point, Young requested that he be removed from the undercover operation due to his drug usage, though he did not inform his superiors that that was the reason he sought

---

[2] The complaint refers to an alleged violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-97b, rather than the ADA. However, the parties' submissions regarding the pending motion for summary judgment make clear that Young is asserting a claim under the ADA rather than the Rehabilitation Act. *See* Pla.'s Resp. Br. at 2 n.1; Def.'s Reply Br. at 1.

2

to be removed. *Id.* at 144-47. It was determined that he would continue performing his undercover work until after the budget process was completed a few months later. *Id.* at 146-47. This was because Young was a productive agent and the task force's budget was apparently based on productivity. *Id.*

In connection with his duties on the task force, Young was in charge of maintaining and recording the contents of the task force's evidence locker. *Id.* at 120-22. The locker contained narcotics used to make controlled buys and sales. *Id.* Young and Burleson began taking drugs from the task force's locker and consuming them during their participation in the undercover assignment in Walker County. *Id.* at 123-24, 131. Young testified during his deposition as to Burleson's participation in the theft of the drugs from the evidence locker and drug use. Id. at 123-32. Following the deposition, Burleson was not questioned by anyone from Helena or Shelby County concerning his alleged use and theft of drugs. Burleson Dep. at 97.

In February of 1999, Young consumed a large quantity of pills and alcohol and wrecked a vehicle provided by the task force. Young Dep. at 173-76. Following the wreck, he entered an inpatient rehabilitation program at the University of Alabama at Birmingham and an outpatient program at Bradford Health Services. *Id.* at 186-93. After his release from the inpatient and outpatient programs at UAB and Bradford Health Services, Chief Rollan assured him that he still had a position with Helena. *Id.* at 200-01. Young's drug treatment counselor released him to return to work for Helena as a police officer, provided that he did not perform undercover narcotics work. Prestigiacomo Dep. at 27. Rollan told Young that he would be temporarily transferred to dispatch for a period not to exceed six months,

3

while Helena monitored his drug usage. Young Dep. at 201. At the time Rollan made this promise, he knew of Young's theft of drugs from the evidence locker. Rollan Dep. at 65.

When Robbie Owens, the District Attorney for Shelby County, discovered that Young had used drugs and taken drugs from the evidence locker, Owens informed Rollan that he would launch an investigation into Young's conduct to ensure that Young would never again police in Shelby County. Young Dep. at 200, 205; Wade Dep. at 33. The Sheriff's office conducted the investigation. Burleson Dep. at 44-45. Upon its completion, Young was charged with possession of a controlled substance. Young Dep. at 206-07.

The Board of the task force decided to prosecute Young for the theft of cocaine.[3] Gray Dep. at 57; Wade Dep. at 26-27; Davis Aff. Van Davis, district attorney for St. Clair County, Alabama, was assigned to prosecute him. Davis Aff. In connection with the drug charges pending against him, Young entered into a Deferred Prosecution Agreement with Shelby County.[4] Young Dep. at 207; Dismissal and Release Order. On August 11, 1999, Young relinquished his law enforcement duties as part of the deferred prosecution agreement. Davis Aff.

### III. Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[3] The task force's board consisted of the heads of the participating agencies. Wade Dep. at 11.

[4] Young stated in his deposition that he had no real choice but to enter into the agreement with Shelby County because he could not afford to fund a defense against the pending charges. Young Dep. at 207.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (*quoting* Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249

(citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Americans with Disabilities Act Claim

Young alleges that Helena violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, by terminating his employment as a police officer based, at least in part, on his addiction to illegal drugs. While the ADA claim is one of several brought against Helena, it is the only claim that presents a federal question. Thus, original subject matter jurisdiction in this court is premised entirely on the ADA claim, while the other claims are supported only by supplemental jurisdiction. *See* 28 U.S.C. §§ 1331; 1367(a) (2001).

The Eleventh Circuit has described the ADA as follows:

> In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1) (West 1995). To accomplish that purpose, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a).

6

*Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996). "In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of an ADA violation through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases."[5] *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).

Thus, upon a defendant's summary judgment motion, the plaintiff must initially establish a prima facie case of discrimination under the ADA by demonstrating that: (1) he has a disability; (2) he, with or without reasonable accommodations, can perform the essential functions of the position held; and (3) he was discriminated against because of a disability. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998). After a thorough review of the record, the court is convinced that Young has not established a prima facie case of discrimination under the ADA. Because Young's prima facie clearly fails in regard to the third element, the court will not address the first two elements.

Young has put forth absolutely no evidence that the employment action of which he complains, his termination,[6] was based, to any extent, upon his drug addiction. Although Young points out that in order to satisfy this element, he need not prove that his disability

---

[5] "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Denny v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001). The plaintiff has clearly failed to present any evidence that, if believed, necessarily demonstrates that he was fired because of his addiction. Thus, he must rely on the presumption created by the establishment of a prima facie case of discrimination.

[6] Young's demotion is the sole employment action of which he complains. While there is some evidence that Chief Rollan was going to allow Young to return to the Helena police department, but at a demoted position until he was satisfied that Young could again perform the duties required of patrol, Young does not complain of this prospective demotion as a violation of the ADA. In fact, he would be hard-pressed to do so: Chief Rollan's decision was never acted upon because Young was placed on leave pending the investigation prior to his returning to work with Helena.

7

was the only reason behind his termination, *see McNely v. Ocala Stra-Banner Corp.*, 99 F.3d 1068, 1078 (11th Cir. 1996), this fact does not absolve Young of the duty to put forth at least some evidence relating the decision to terminate his employment to Helena's alleged perception that he was disabled. Case law from the Eleventh Circuit clearly shows that Young is under an obligation to put forward some evidence tending to show that the employment action of which he complains is based, at least in part, upon his disability. *See Harris v. H & W Contracting Company*, 102 F.3d 516, 524 (11th Cir. 1996)

In urging that the reason Helena terminated him was based on the fact that it considered him disabled, Young first points out that his violations of Helena's policies against theft and the use of drugs, which Helena advances as a legitimate, non-discriminatory reason for having fired him, were known and accepted by Helena at the time that Chief Rollan told Young that he would be able to return to work. While this fact may, to some minor extent, cast doubt on Helena's proffered reason, it does not allow for an inference from which a jury could determine that his employment was terminated because of his addiction to illegal drugs.

Young next argues that Helena terminated him for his use of drugs and insists that his use of drugs cannot be separated from his drug addiction. Such a position is entirely untenable. The court finds that a simple, yet profound, distinction exists between the use of illegal drugs and the addiction to illegal drugs. The former is against the law; the latter is not. That his violation of the law was taken into consideration when terminating his employment does not mean, nor does it support the argument that, his addiction was also considered by Helena when terminating his employment.

8

Young submits that the investigation into his possession of illegal narcotics occurred during his treatment for addiction. As the facts indicate, Young's treatment occurred during and after the time in which it was discovered that he had taken drugs out of the evidence locker and used them in violation of the law. That he was being treated for an addiction at the same time that he was investigated for illegal drug possession and use is not a sufficient basis upon which a reasonable jury could find that Young's addiction was a motivating factor in his dismissal.

Finally, Young argues that Burleson, with whom Young had allegedly stolen and used drugs from the evidence locker, was never investigated or threatened with prosecution. Apparently, Young is arguing that the fact that "neutral rules of misconduct were not uniformly applied" allows for an inference that Helena took his drug addiction into account in deciding to terminate him. It does not.

After thoroughly reviewing Young's arguments and the entire record, the court is convinced that no reasonable jury could find that Young's employment was terminated, even in part, for a discriminatory reason related to his addiction. As a result, he has failed to establish a prima facie case of discrimination under the ADA and summary judgment is due to be granted as to this count.

### B.    State Law Claims

Young's remaining claims are based in state law and neither involve a federal question nor provide any other basis for original federal jurisdiction. As such, the court will decline to exercise supplemental jurisdiction over those claims and, instead, will dismiss them without prejudice. 28 U.S.C. § 1367(c)(3).

## V. Conclusion

Finding that plaintiff Young is unable to establish a prima facie case of discrimination under the ADA, the court will grant summary judgment as to that claim. As to the remaining state law claims, the court will dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The court will enter an appropriate order in conformity with this opinion.

Done, this ____ of January, 2002.

```
_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE
```

10